The next case will be 051530, WCM Industries, Prior Products, Incorporated, Mr. Izzali. Mr. Izzali. May I please report? Your Honors, this case is about a backflow preventer. I apologize, I didn't bring binoculars so you could see it better. But a backflow preventer is designed to prevent the backflow of pesticides and sand through a water hydrant to contaminate a water supply. And at the time of WCM's invention, backflow preventers were known, but there were problems. One of those problems is that because of the size and rigidity of the backflow preventer, they would interfere with the inflow and reduce pressure at the outlet end. But more importantly, the problem was that they did not effectively seal against backflow pressure. And particularly, they would not seal at low head pressure. The American Society of Sanitary Engineers has established a standard under 1019C for evaluating backflow preventers as to how effectively they seal at low head pressure. It's a difficult test to pass. It first requires that the backflow preventer seals at 6 inches of water, which is less than a quarter pound per square inch of pressure. Mr. Izzali, don't you want to talk about claims instruction? Yes, Your Honor, I do. With limited time? With limited time, I just want to give you some context on the operation and background of this device. Please read the briefs. But particularly, one of the reasons we're here today is because we believe the Court has erred in construing the claims and particularly want to focus on the term pointed sealing edge. And the Court has construed that term to require that the pointed sealing edge seal when there is back pressure in the housing. Do you lose if that construction is correct? No, we do not. Why not? Well, because even if that is true, there was evidence presented at trial, or at the preliminary hearing, that Pryor's device did seal at the pointed sealing edge. There was evidence that the Court didn't acknowledge. There was testimony by the Vice President of Engineering for WCM, William Ball, who identified all the parts in Pryor's devices. What did he testify to? That the pointed edge sealed under very weak backflow conditions? Correct, yes. He said that it had to. In fact, in answer to the question was, he was asked the question, how much of that portion contacts the inner wall of the tube? What page are you reading from here? This is from A167. His answer, starting at line 20. Well, I would answer that by saying a point. At the very, very start, it's a point. At the very, very start of low head pressure, at some point, it will stop any leak. It has got to be a point. And actually, this was on cross-examination that he was asked this question. But he's just saying at the start, it's a point. He's not saying that the point stops the backflow, is he? Well, he also testified about a test he conducted of Pryor's device. And in this test, there was a clear tube where you could see Pryor's backflow preventer inside. And at normal conditions, under normal engagement, the free state where there was no pressure, it's a very, very thin sealing line around this tube. Where's that? At... Starts at A165. He begins talking about at zero. Question was, or... He is asked, does it face seal at that point?  It's at some point all the way around the edge of the inside of the tube. Would you call that a pointed sealing edge? Yes. Later on, as he's describing the test, shows it at six inches of water at the outlet end, which is a quarter of a point, less than 0.25 psi. But the part that you just read is at zero pressure. There's no backflow. Yeah. Well, there may be residual fluid, but there's no back pressure at that point. But he went on to discuss, and at A166... Well, before we get there, at the very bottom of 165 is when he started to talk about the six-inch water pressure. But A166, he's talking about the results at 24 inches of water. And at line 8, where he's asked, what are the results at 24 inches of water? Line 8, he says, approximately the same as the six-inch. You can see that right behind the lip, that little edge, it's only touching the wall at the lip portion. Also at A168, on redirect, he was asked, with respect to your testimony about the face sealing, is it your belief that before the prior check valve face seals, that it must seal at a pointed sealing edge? His answer, yes. And why? Because if you don't, you are going to have a drip. And some of the background that I was getting to on this device is that Pryor's device, what was unique about it, is that it has this first outer surface that extends outwardly and normally engages the tube. When inlet pressure comes in, it bends inwardly, which allows water to flow in with minimal obstruction. And then, according to the specification, the way that this seals is that back pressure comes in, it hits the inner wall plus that hollow tube, and it presses that first outer surface against the inner wall. Now, we believe that the court's construction of pointed sealing edge not only contradicts the language of the claim, but it also excludes that preferred embodiment. The claim on its face only requires that the pointed sealing edge normally engage the inner diameter of that housing. When it talks about sealing engagement, it talks about the lip portion as a whole, not the pointed sealing edge. And because of this distinction, the claim on its face isn't requiring that the pointed sealing edge seal against backflow pressure. It's only requiring that it seal in its free or normal state. That doesn't make a lot of sense. I mean, the prosecution history talks about the advantages of the pointed sealing edge protecting against backflow. And under your construction, the pointed sealing edge wouldn't perform any sealing function. It would just rest there in the normal condition in which there's no pressure in either direction. Well, I think there's a difference between backflow and backflow pressure. Backflow is just residual water that is collected in the tube, and there's no pressure at that point. So it's sealing in its normal state to prevent any leakage whatsoever. Under backflow pressure conditions, you have inflow pressure coming in normally at 60 psi, and just the raising of a hose can create backpressure that potentially can contaminate the water supply, even at a quarter pound per square inch of pressure. And in that condition, ideally, the pointed sealing edge would seal. But what we've found and what the specification describes is that it's the whole lip portion. And that's what was unique. In the prior art, there is Hirsch, which had a long axial lip portion, and it not only obstructed the inflow, but it required greater pressure to seal because at lower pressure, it would waffle. And until you had enough pressure to press that whole axial surface, you would get leakage. Hama would fail at higher pressure. It was just a pointed seal. It had a diagonal wall, but it describes in the background at higher pressure, it would come in and it would force that tip away. What WCM came up with was a pointed sealing edge that had a first outer surface that would extend outwardly from the sidewall and would flex at that point. Mr. Day? Yes, in a second. Mr. Zahr? Mr. Zahr, Tim, you had that little seal there, didn't you? Can I have that and present that to the court? If the court might, may I please? I will also give you that. Suppose we were to conclude that there's a genuine issue of material fact here under the court's claim construction of pointed sealing edge because there's some testimony that the accused device does seal against back pressure, at least at very low conditions, through the pointed sealing edge. What other arguments do you have for affirming the district court's judgment? The district court made the judgment. Would the court like to see this? Why don't you hand them to the clerk and she can bring them to us? Tim, do you have yours? Oh, here it is. No, that's ours. You didn't have yours. Well, that's all right, sir. Go ahead. That's the kind of exhibit that's useful to send to the court beforehand. Yes, right. In response to that, what Mr. Zahrle and Your Honor was referring to is really shown on page 23 of the court's decision. And that is, in fact, a band. If you can imagine that that is not a pointed sealing edge, but that forms a band which contacts the outer wall at that point or at that area. It's a band. It's not a sharp point as required in the claims. And even if the prior device does contact the inner edge of the pipe at what you could claim is a point, which we really claim is a fairly broad band, you do not have the remaining required elements of the claim. Okay, so what are those? What are those? Okay, first of all, you do not have a first outer surface, which is, in fact, the broad flat planar surface, vertical flat planar portion, which is in a plane transverse to the center axis to create a pointed sealing edge normally in engagement with the inner diameter of the housing. And nor do you have a lip portion which has a size and shape to permit it to deflect toward the axis of the housing and all the rest of that paragraph. Now, that last clause invites, opens a careful reading of the specification when it is that kind of almost means plus function. It's not means plus function. Just try to be specific about what's missing here. I found this whole thing, spent a lot of time trying to figure it out. The briefs were not entirely clear. The opinions not entirely clear. What other specific things are missing here? What other elements of the claim are missing in the accused device? Is that the court's question? Yeah. The vertical flat planar portion. Vertical flat planar portion which is in a plane transverse to the center axis. Is that the only thing? It is the whole issue of the lip portion as is properly construed in accordance with the specification and drawings. But we can hang our hat. You got to be precise. We can hang our hat on the absence of the vertical flat planar portion which is in a plane transverse to the center axis. What about the triangular cross-sectional shape? You know, Judge Blackburn had a construction in his opinion that required that triangular portion to be construed to have the vertical flat planar portion included as a whole in that. And the pointed edge too. And the pointed edge, he said that. And the pointed edge. Yeah, he said that's part of the triangular thing. Because that is. So the triangular thing is not an independent thing. It's a combination of the pointed edge and the planar portion. That's right. And we know from kindergarten that we can cut a triangle out of anything. So the cutting of the triangle, the formulation of the triangle to be in accordance with the claim and with the specification and the drawings, the patent taken as a whole must include a broad flat portion which resists the back pressure right to left in your drawing. The water pressure bears against that and pushes that point out. It's a point engagement, a point seal. And that is the distinction of this patent between Hamas and Hannah. That's why these claims were allowed. And specifically, the prior device is a face seal device. It never point seals in a point as shown in that triangular tip point. It is always, at the least, a broad band which then becomes broader and the whole leg face seals when water pressure is applied. And that is specifically the kind of device that WCM says that theirs is not. They say face sealing backflow preventers like the one shown by Brennan and they deprive the function of these face sealing backflow preventers. Well, WCM found a way, excuse me, prior found a way to make a face sealing backflow preventer work. Are you saying that the vertical flat planer, in response to this question, is missing from your device? Is that missing no matter which construction is accepted, whether it's perpendicular or plus or minus 85 to 95? Does it matter to your answer? You've seen the seals and they are merely a material termination. In the first version of that, it's just a very thin flat edge which really has no water pressure that bears against it and causes a pointed sealing edge to engage the inner housing. It's just a material termination. And even if you look at that material termination edge as a flat planer edge, which we think is improper construction under the claims, when it is in the tube is at a 15 degree angle. And so even then it is not a vertical flat planer edge when you have a material termination with a radiused edge, there is no vertical flat planer edge anyway. Now, the plaintiff had decried that, said it's not significant, but when you say that that's not significant, then what you do is disregard clear black letter law that every term in the claim must be found in the accused's device. He disregards that. Where do we find in the specification the description of this vertical flat planer portion? Okay. In the specification. You know, the best analysis of that was Judge Blackburn's analysis. I will try. That's not intrinsic evidence or extrinsic evidence. I will try. It's also not an answer to the question. I understand that, Your Honor. Judge Blackburn did refer specifically to the specification for support of his analysis. I will say that what he looked at was figure 7A. Now, you see leader line 48. What page? That's in the patent, 303 patent, bottom of the page, figure 7A. Leader line 48 at the bottom there wraps around to that broad flat vertical planer face. Is 48 identified in the specification as the vertical flat planer face? He calls it in the specification the backflow inner wall. So the specification doesn't tell us what the vertical flat planer surface is. He calls it also the flange. You have to read it. Yes, it doesn't tell us what the vertical flat planer surface is. That's got to be it, Your Honor. What else could it possibly be? Because it's not your patent. Pardon? It's not your patent. It's not my patent, no. You don't have to defend the clarity of the specification. No, but I had to contest the clarity of the patent at trial, which was not easy to do. That vertical flat planer surface has to be that flat plane 48. And we know that that has to bear against the water pressure. It's called the flange in other parts of the specification. And that bears against the water pressure. And only, as you see in 48, that pointed edge contacts the inner wall. Where does the specification say the flange prevents backflow? Okay. Okay. The whole part is called a flexible flange, column 2, line 22. Flexible flange, normally extending outwardly therefrom to engage the inner surface of the housing. So that's where it talks about that. And it's called a flange in that. And, of course, a flange bears pressure. That is the intrinsic ordinary meaning of the term flange. So when it's at rest, it's perpendicular. When it's got pressure one way or the other, it'll bend 5 degrees, up to 5 degrees either way. That's right. When there's back pressure right to left on your drawings, then the water pressure bears against that flange surface, pushes that pointing seal into engagement with the inner wall. When there's normal pressure left to right in your drawings, then that flange deflects away to what you see in figure 7B. And you don't do that. We don't do that either. At all. We don't do that. We don't do that. So, OK, I do want to move to the second issue. And that is about the fluid exit conduit of the 039 patent. Now, the fluid exit conduit, the question put to the court was where does the fluid exit conduit have to be? And I refer to the second clause, the second subparagraph in the 039 patent, column 3, a laterally extending fluid conduit member between and adjacent the forward ends of the first and second fluid inlet pipes and being in fluid communication therewith. The question put to the court was where is this fluid conduit member required to be? And he said, as set forth in the claim, between the first and second fluid pipes. And then he also said that anything connected to the laterally extending conduit will necessarily be located between the forward ends of the pipe. So that is also contested. And the plaintiff suggests that it could extend way beyond the ends of the fluid conduit. And imagine, if you will, a hot pipe coming in here, a cold pipe coming in here, and under the claim, the laterally extending fluid conduit has to be between these two. But under the plaintiff's construction, hot here, cold here, and then a manifold pipe which could extend, I don't know, 50 or 100 yards, whatever house run is, and that pipe would be a mixing pipe, and that could be connected to various pipes and various pipes ad infinitum. And it would still be under the claim. So the only reasonable meaning of the 039 patent, laterally extending fluid conduit member between an adjacent forward ends, is it has to be between and only between. So I hope I've answered the court's questions. Thank you. Mr. Jarle. Thank you, Your Honor. Mr. Day's argument demonstrates many of the factual issues that were present at the preliminary injunction hearing. At the time of that preliminary injunction hearing, it was combined with the Markham hearing, and we requested a separate hearing for summary judgment. We did not have the benefit of the court's claim construction at that time in presenting evidence, but we did the best we could. Mr. Day has argued that they don't have a vertical platform apportionment. We disagree. We provided charts. We provided testimony from Mr. Ball where we identified that vertical platform apportionment. Show us where that is. Mr. Ball's testimony is at A161, 162, relying on charts that are at A172 through A174. There was much disagreement. Where in the charts is the vertical planar surface? At A173, it's identified by numeral 5. So unlike the device shown in the chart, shown in the patent, though, this is not really the surface that's preventing backflow. Well, it's part of the lip portion, and the claim requires that it's the lip portion that prevents or that seals against backflow pressure. Well, the lip portion is the pointed edge? No, the lip portion is a combination of the first outer surface. The flat planar portion, and at their point of intersection, creates a pointed sealing edge, but the lip portion comprises all of those components. The claim also requires that that lip portion be a size and shape that it will bend in the presence of inlet pressure, and it will engage the inner diameter of the housing against backflow pressure. In describing that function in the written description, the owner asked where vertical flat planar portion is described. As best it is described, it's the inner wall, but the description talks about the inner wall extends downstream and diagonally outward from the base portion, which is the bottom of the backflow. So it talks about that wall extending diagonally, and the term vertical was introduced during the prosecution history to overcome the Hirsch patent, which had a lip portion that extended axially. It was introduced to identify the pointed seal that intersected with this diagonal portion. At the time that that term was introduced, though, there was a dependent claim that required that that downstream surface be substantially perpendicular. That, I believe, shows an indication that the patentee did not intend that term vertical to be perpendicular, otherwise it would have no meaning in the dependent claim. There are other factual disputes about how it's operated, which we've already talked about. There's factual disputes as to whether or not their point actually seals, and we believe it does. Moving on to the last point about the fluid exit conduit, we don't believe there's any limitation to limit the claim. In fact, the court didn't even limit the claim. The points that Mr. Day referenced are just dicta, and the problem that we have is that after his claim construction, Pryor came out with a device which is identical to one of ours that has an exit conduit that is not between the pipes. We've written them about this. They've cited the dicta. That's what's a problem for us. We're hoping to clarify that here. Are there no further questions? Thank you. The case is submitted. I report to the jury until tomorrow morning at 10 a.m.